IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHELDON GECHT,                       )
                                     )
        Plaintiff,                   )
                                     )
    v.                               )    No. 03 C 9129
                                     )
HELEN E.R. SAYLES, Senior Vice       )
President of Human Resources and     )
Administration, in her capacity as   )
Administrator of the Liberty Mutual  )
Severance Pay Plan, and LIBERTY      )
MUTUAL INSURANCE COMPANY,            )
                                     )
        Defendants.                  )

**MEMORANDUM OPINION**

Before the court is defendants' motion for reconsideration of our ruling on their motion for summary judgment. For the following reasons, the motion is granted.

**BACKGROUND**

In this ERISA action, plaintiff, Sheldon Gecht, claims that defendants, Liberty Mutual Insurance Company and the Administrator of its Severance Pay Plan, Helen E.R. Sayles (collectively, "Liberty"), failed to pay him the full amount of severance pay to which he was entitled (fifty-two weeks' pay instead of twenty-nine weeks' pay) and breached a contract by failing to pay him the full amount of a retention bonus.

The relevant facts are set forth in our Memorandum Opinion of August 25, 2005 and will not be repeated here. In that opinion, we granted Liberty's motion for summary judgment on the breach of contract claim for additional retention bonus pay and denied the motion as to the ERISA claim for additional severance benefits. Liberty now moves for reconsideration of the latter ruling.

As we previously explained, our review of Liberty's decision to deny plaintiff severance pay beyond twenty-nine weeks' salary is limited to determining whether the denial was "arbitrary and capricious." In other words, we ask whether there is a reasonable explanation for the decision in light of the plan documents and other evidence. See Hess v. Hartford Life & Accident Ins. Co., 274 F.3d 456, 461 (7th Cir. 2001).

Liberty contends that its Severance Pay Plan (under which plaintiff would have received fifty-two weeks' pay) provides that certain employees are ineligible for severance pursuant to that plan if they are entitled to severance benefits calculated or determined under any other plan or contractual agreement. According to Liberty, plaintiff was entitled to severance benefits determined under the "Master Agreement" between Liberty and plaintiff's former employer, OneBeacon. But Liberty failed to provide all of the relevant portions of the Master Agreement with its summary judgment briefs. Because Liberty did not give us all the necessary information to decide whether its Plan

Administrator's decision was arbitrary and capricious, we denied its motion with respect to the severance pay claim. Liberty has now submitted the entire Master Agreement and argues that it is entitled to summary judgment on the severance pay claim because its decision was reasonable in light of the relevant terms of the Master Agreement.

A large portion of plaintiff's response to Liberty's motion is devoted to arguing that we should not consider the relevant portions of the Master Agreement at all because those portions were not produced earlier and therefore are not part of the administrative record. It is true that our review of the Plan Administrator's decision is limited to the administrative record, see <u>Reich v. Ladish Co.</u>, 306 F.3d 519, 524 n.1 (7th Cir. 2002). The Master Agreement, however, <u>was</u> part of the administrative record here; Liberty explicitly relied upon it in its denial of additional severance pay.[1]

Plaintiff also asserts that Liberty "cannot be allowed, after a bad result, to correct the error of its ways by submitting the entire Master Agreement, citing some other provision as a basis for its denial, as an afterthought." (Response at 2.) Liberty does

---

[1] Plaintiff also implies that because he requested from Liberty all documents relevant to his claim, and Liberty did not produce the Master Agreement, it is not part of the administrative record. Plaintiff cites no authority for this argument, and we reject it. Whether Liberty provided plaintiff with all the documents to which he was entitled is a separate matter (and in any event, plaintiff does not allege in his complaint that Liberty wrongfully withheld any documents and thus failed to comply with ERISA's disclosure requirements).

not cite "some other provision" as a basis for its denial, though; it cites the same provision that it previously cited. The difference is that Liberty has now given us the necessary context for that provision. We agree with Liberty that the interests of judicial economy would be served by allowing Liberty to submit the entire Master Agreement and by reconsidering our decision, thus possibly saving the time and expense of an unnecessary trial.

## **DISCUSSION**

To recap, Liberty's Severance Pay Plan provided that employees would not be eligible for benefits under that Plan if they were entitled to severance benefits calculated or determined under any other plan or contractual agreement. Liberty's position is that plaintiff was entitled to severance benefits determined under another "contractual agreement"--the Master Agreement. The Master Agreement states as follows:

> In lieu of providing benefits under the Liberty Group severance plans, Liberty shall cause the Liberty Group to provide the following severance pay and benefits to Transferred Employees terminated by Liberty prior to June 1, 2003: (x) severance pay in accordance with the criteria set forth on Schedule 5.09(c); (y) COBRA subsidies or COBRA enhancements in accordance with the terms of the OneBeacon severance plan or policy applicable to the Business Employees as in effect on the date of Closing (the "OneBeacon Plan"); and, (z) outplacement benefits in accordance with the applicable Liberty Group plan ("Outplacement Benefits") . . . .

(Master Agreement at 31.) Liberty previously provided no context for this paragraph, and we explained the deficiency as follows:

> The Court has been provided absolutely no context for the above-quoted paragraph of the Master Agreement regarding severance benefits. We have not been told which section of the Master Agreement the paragraph appears in. We do not have the introductory portions of the Master Agreement. We do not have the definitions section of the Master Agreement, so we do not know what a "Transferred Employee" or a "Business Employee" is. We do not have the portion of the Master Agreement referred to by [Debra] Waldstein that lists "all special agreements to be honored by RAM," which purportedly does not include plaintiff. We have no context for or other references to Schedule 5.09(c), so it is unclear why that schedule is labeled as "Reimbursed Severance Payments" and not simply "Severance Payments." Such provisions are obviously crucial to a full understanding of the Master Agreement. Liberty has failed to give the court the necessary information to decide whether the Plan Administrator's decision, which ultimately relied on the Master Agreement, was arbitrary and capricious.

(Memorandum Opinion of August 25, 2005 at 20-21.)

We now have the entire Master Agreement and, accordingly, the necessary context for the paragraph regarding severance benefits and the answers to the above-identified issues. The paragraph appears in Article V, which pertains to "Covenants," and Section 5.09, which pertains to "Employees and Employee Benefits." Appendix A to the Master Agreement, the Glossary of Terms, defines "Transferred Employees" as "the Business Employees who accept an Offer of Employment." (Master Agreement at A-25.) "Business Employees" are "the active, full and part-time employees of OneBeacon . . . who are principally employed in connection with the Business." (Id. at A-4.) The "Business" is defined as "the property and casualty insurance business operations conducted by the OneBeacon Subsidiaries through the use of Independent

Producers, including those operations relating to the underwriting, issuance, sale, renewal and servicing of insurance policies issued in connection therewith . . . ." (Id. at A-3.) In Schedules 5.09(e)(v)(A) and 5.09(e)(v)(B), the Master Agreement contains lists of employees with special severance obligations to be honored by Liberty, which do not include plaintiff. It appears that Schedule 5.09(c), which is referred to in the paragraph regarding severance benefits, is entitled "'Reimbursed' Severance Payments" because the Master Agreement sets forth certain severance payments for which Liberty is responsible for reimbursing OneBeacon.

Now that we have all the relevant portions of the Master Agreement, it is clear that there is a reasonable explanation for Liberty's decision to award plaintiff twenty-nine weeks of severance pay and not fifty-two weeks. There is no genuine issue that plaintiff was a "Transferred Employee" to whom Schedule 5.09(c) applies. Schedule 5.09(c) provides for one week's severance pay per year of service for those who had been employed for twenty-six years or more. Gecht had been employed for approximately twenty-eight complete years and appropriately was awarded twenty-nine weeks' severance pay.

Plaintiff raises only two substantive arguments in the event that we consider the Master Agreement. Plaintiff first argues, as he did previously, that we should deny defendants' motion because Liberty relies upon a version of a Severance Pay Plan that is dated

July 1, 2002, months after plaintiff's termination. We already addressed and rejected this argument, explaining that the provisions of the January 2002 version--the applicable version of the Severance Agreement--are substantially the same as those of the July 2002 version, and that reliance on the January 2002 version would not have changed the conclusion of the Plan Administrator.

Plaintiff's other contention is that a January 15, 2002 letter to him from Liberty stated that plaintiff was being employed during a "Retention Period" and that during that period, plaintiff would be "eligible for employee benefits on the same basis as other employees with similar job equivalencies and length of service." (Letter from Robert J. Jacobson, Vice President, Personal Lines Operations, to Sheldon Gecht, January 15, 2002, at 1, Ex. A to Declaration of Debra Waldstein, Ex. 2 to Defendants' Memorandum in Support of Motion for Summary Judgment.) According to plaintiff, this statement was a "promise" that "is consistent with and corroborates Plaintiff's position in this matter, notwithstanding whatever language Defendant now claims is contained within Defendant's Master Agreement." (Response at 3.) This argument cannot carry the day. This is an ERISA claim, not a breach of contract claim, and plaintiff does not explain how the statement in the letter factors into the determination of whether the Plan Administrator's decision was reasonable, considering the Plan documents, or how the statement somehow overrides the Plan

documents.  Plaintiff fails to cite any authority whatsoever in support of his argument.  Moreover, the statement does not "corroborate" plaintiff's position that he was entitled to fifty-two weeks' severance pay because it does not address at all which severance pay plan or contractual agreement would apply to plaintiff.

We have again reviewed the materials previously submitted by plaintiff in response to defendants' motion for summary judgment, which fail to raise a genuine issue of material fact that Liberty's Plan Administrator reasonably interpreted the terms of its Severance Pay Plan.  We are satisfied that Liberty's denial of additional severance pay to plaintiff beyond twenty-nine weeks' pay was reasonable.

## CONCLUSION

For the foregoing reasons, defendants' motion for reconsideration of our ruling on their summary judgment motion is granted.  Summary judgment in favor of defendants and against plaintiff will be entered on plaintiff's ERISA claim for additional severance benefits.

DATE:           November 4, 2005

ENTER:          _____
                John F. Grady, United States District Judge